The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Larry FORGEY and Thelma Forgey,
Defendants–Appellees.

No. 88SA20.

Supreme Court of Colorado,
En Banc.

March 20, 1989.

Philip Bienvenu, Dist. Atty., Lamar, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Tad Overturf, Deputy State Public Defender, La Junta, S. Ford Anderson Lamar, for defendants-appellees.

ERICKSON, Justice.

The prosecution appeals the Baca County District Court's order dismissing charges against appellees for violation of section 38–35–109(3), 16A C.R.S. (1982),[1] based

---

1. Section 38–35–109 provides in part that:

(3) Any person who offers to have recorded or filed in the office of the county clerk and recorder any document purporting to create a lien against real property, knowing or having reason to know that such document is forged or groundless, contains a material misstatement or false claim, or is otherwise invalid, shall be liable to the owner of such real property for the sum of not less than one thousand dollars or for actual damages caused thereby, whichever is greater, together with reasonable attorney fees....

(4) Anyone who violates the filing limitations of subsection (3) of this section commits a class 1 misdemeanor and shall be punished as provided in section 18–1–106, C.R.S. 1973.

upon a finding that the statute under which the prosecution proceeded was unconstitutional. Appellees Larry and Thelma Forgey were charged by the Baca County District Attorney with a class one misdemeanor for filing a "false" or "invalid" lien against real property located in Baca County in violation of section 38-35-109(3). The district court dismissed the charges, ruling that section 38-35-109(3) is unconstitutional because the provision that no person shall file with the county clerk and recorder's office "any document purporting to create a lien against real property" is vague and ambiguous. In our view, section 38-35-109(3) is neither vague nor ambiguous. Accordingly, we reverse the trial court's order dismissing the case and remand with directions to reinstate the complaints and for further proceedings consistent with this opinion.*

## I.

On April 6, 1987, the Baca County District Attorney filed two separate but identical nine-count complaints against Larry and Thelma Forgey alleging that the Forgeys had unlawfully filed documents with the Baca County Clerk and Recorder's office that purported to create liens against real property in which the Baca State Bank and its directors had an interest. The bare bones record before us makes it difficult to ascertain the relationship between the Forgeys and the bank and its directors, and the events that caused the Forgeys to file the documents. It appears from the Forgeys' pro se answers that Baca State Bank loaned the Forgeys funds and secured the loan by taking a deed of trust on the Forgeys' property. The Forgeys evidently defaulted on the loan at some later date because the bank foreclosed on the property. In retaliation for the bank's foreclosure, the Forgeys filed nine documents with the Baca County Clerk and Recorder's office which clouded title to real property owned by the bank. These documents, each of which was titled "Notice of Equity Interest and Claim," stated that the Forgeys "claimed an interest, if not all interest in the property described and listed in this claim," and that "this [claim] and interest

have not been fully determined in value of Dollars but is believed to be in excess of FIVE MILLION DOLLARS ($5,000,-000.00)." The claims were also stated to be "transferable as negotiable for value," and to "stand forever or until satisfied." It is undisputed that at the time the Forgeys filed the documents no litigation was pending between them and the bank, nor had they won any type of judgment against the bank.

The trial judge consolidated the separate cases against the Forgeys. The Forgeys filed a motion to dismiss, alleging that section 38-35-109(3) & (4) was unconstitutional because it violated the equal protection provisions of the United States and Colorado constitutions. The trial court denied the motion on August 21, 1987. The Forgeys subsequently filed another motion to dismiss, this time alleging that the documents they filed created neither de facto nor equitable liens on real property and, there being no liens, they could not be guilty of violating section 38-35-109(3).

A hearing on the motion was held December 7, 1987, at the conclusion of which the trial court found section 38-35-109(3) unconstitutionally vague. In reaching its decision, the trial court first stated that a document filed with the clerk and recorder's office creates a lien if there is certainty as to the identity of the parties to the lien, certainty as to the identity of the property encumbered by the lien, and certainty as to the amount of the lien. Because the documents filed by the Forgeys did not state a definite dollar amount, the certainty as to the amount of the lien requirement was not met, and the trial court therefore held that the documents did not create a lien.

The trial court then turned to the issue of whether the language contained in section 38-35-109(3) rendered the statute unconstitutional. The analysis focused on the phrase "any document purporting to create a lien." The trial court began its analysis by stating that the word "purport" has two distinct meanings. In the first instance, the court asserted that the word is used "basically as a noun, and it means the

substance of the document." The court stated that if this definition is applied, then the filed document "must meet the standard of some type of lien." A party therefore will violate section 38–35–109(3) only if the document he files is in fact a lien. Since the court had previously determined that the documents filed by the Forgeys did not create liens because of the indefiniteness of the dollar amount involved, it held that if it were to apply this definition of "purport," section 38–35–109(3) was not violated. The trial court then noted that "purport" can also be read to mean "intend." Under this alternative definition, the relevant inquiry according to the trial court is whether a party, by filing a document, intended to create a lien. Whether the party succeeded or not is irrelevant; if the party had the requisite intent, section 38–35–109(3) was violated. Under this definition, the trial court concluded that the Forgeys would be guilty of the charged crime since the documents were "filed with intent to create a lien against the named persons such as the Baca State Bank."

Because the statutory language contained in section 38–35–109(3) could be construed two different ways, the trial court found the statute unconstitutional. Specifically, the court stated that it felt

> that the statute is unnecessarily vague because the statute does not specify which one of these meanings the statute has. It does not give adequate notice to the parties as to what act is being prohibited or the specific acts that are being prohibited.

> The Court is therefore going to declare that the statute does not meet constitutional standards for giving notice to the public as to the crime, and at this time rules that the statute is an unconstitutional statute and dismisses this case based upon the constitutionality of the statute.

The appellants filed a notice of appeal with this court pursuant to section 16–12–102, 8A C.R.S. (1986). The only issue on appeal is whether the trial court erred in ruling that the phrase "any document purporting to create a lien against real property" renders section 38–35–109(3) vague and ambiguous.

## II.

A statute that forbids the doing of an act in terms so vague or ambiguous that persons of common intelligence must necessarily guess as to its meaning and differ as to its application violates the due process clause of the fourteenth amendment to the United States Constitution and article II, section 25 of the Colorado Constitution. *E.g., Smith v. Charnes,* 728 P.2d 1287 (Colo.1986); *People v. Schoondermark,* 699 P.2d 411 (Colo.1985); *People v. Enea,* 665 P.2d 1026 (Colo.1983). Legislative enactments enjoy a presumption of constitutionality, however, and the party challenging them bears the burden of proving their unconstitutionality beyond a reasonable doubt. *People v. McBurney,* 750 P.2d 916, 920 (Colo.1988). While it is true that the rule of lenity requires that a penal statute be strictly construed in favor of a defendant, there is no prohibition against giving statutory words their full meaning in the context in which they are used. *People v. District Court,* 713 P.2d 918 (Colo.1986). The rule of lenity should be used only to resolve statutory ambiguity, and not to create it by disregarding the clear legislative purpose for which the statute was enacted. *People v. District Court,* 711 P.2d 666 (Colo.1985).

In our view, the language contained in section 38–35–109(3) is plain and unambiguous. We have not previously had the opportunity to interpret the word "purport" in the context of the Colorado recording statute. In construing previously undefined statutory words and phrases, we should accord them their plain and ordinary meaning. *See People v. District Court,* 713 P.2d 918 (Colo.1986). We have frequently looked to the dictionary for assistance in determining the plain and ordinary meaning of words. *People v. Huckleberry,* 768 P.2d 1235 (Colo.1989) (definition of "alibi"); *Kane v. Royal Ins. Co. of America,* 768 P.2d 678 (Colo.1989) (definition of "flood"); *People v. Winters,* 765 P.2d 1010 (Colo.1988) (definition of "incarceration");

**784** ■

*Hartley v. Colorado Springs,* 764 P.2d 1216 (Colo.1988) (definition of "abandonment" and "discontinuance"). Black's Law Dictionary provides two definitions of "purport." The first is defined as the "meaning" of an instrument, as in "[t]he 'purport' of an instrument means the substance of it as it appears on the face of the instrument." The second definition is "to convey, imply, or profess outwardly." Black's Law Dictionary 1112 (5th ed. 1979). Thus the trial court's assertion that the term "purport" has two distinct interpretations, one in which the term is used as a noun and the other in which it is used as a verb, was correct. Whether "purport" as it used in the statute is a noun or a verb does not cause the statute to fail for vagueness. *See People v. Young,* 694 P.2d 841, 842 (Colo.1985); *People v. Sequin,* 199 Colo. 381, 386, 609 P.2d 622, 625 (1980). The relevant inquiry remains whether a person of average intelligence has fair warning of the conduct prohibited. *Eckley v. Colorado Real Estate Comm'n,* 752 P.2d 68, 73 (Colo.1988).

In this case we construe section 38–35–109(3) as prohibiting two types of conduct. The first type of prohibited conduct occurs when a party files a document that meets the statutory or common-law requirements necessary to create a lien, but which is "forged or groundless, contains a material misstatement or false claim, or is otherwise invalid." § 38–35–109(3). Under this scenario, the document purports to create a lien in the sense that it facially appears to have complied with statutory or common-law requirements necessary to create a lien. However, because the document was filed by a party who knew or had reason to know that it was unfounded, it is invalid. Thus a party who files a document that is invalid because it is unfounded is subject to prosecution under section 38–35–109(3).

The second type of prohibited conduct occurs when a party files a document which does not comply with the statutory or common-law requirements necessary to create a lien, knowing or having reason to know that the document was unfounded. In this case, the document "purports" to create a lien against real property in the sense that the filing party intended that the document act as a lien and cloud title to real property. Whether or not the document filed actually creates a lien or clouds title is irrelevant; the inquiry focuses on whether the filing party intended to do so.

■ This interpretation of section 38–35–109(3) comports with the legislature's intention to curb the filing of all but valid liens against property. Senate Comm. Hearing on S.B. 103, 52d Gen. Assembly (Feb. 6, 1980). The dispositive factor is not whether the document does or does not create a lien, but whether the document was filed by a party who knew or had reason to know that the document would unjustifiably cloud title to real property. Applying this interpretation to the standard for determining whether a statute is vague or ambiguous, we conclude that section 38–35–109(3) does not require that a person guess as to its meaning or differ as to its application. *See Smith v. Charnes,* 728 P.2d 1287 (Colo.1986). Accordingly, we reverse the trial court's order dismissing the case and remand to the trial court with directions to reinstate the complaints and for further proceedings consistent with this opinion.