2014 COA 22

**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Stephen S. FIOCO, Defendant-Appellant.**

**Court of Appeals No. 12CA1529**

Colorado Court of Appeals, Div. A.

Announced March 13, 2014

Teller County District Court No. 10CR123
Honorable, Edward S. Colt, Judge.

John W. Suthers, Attorney General, Gabriel P. Olivares, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Kielly Dunn, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE WEBB

¶ 1 Section 14(4)(b) (the 14(4)(b) defense) of the Medical Marijuana Amendment (Amendment), article XVIII of the Colorado Constitution, creates an affirmative defense to the offense of cultivating marijuana, where the plants are needed for medical use. Whether this defense can be asserted based on a physician's assessment obtained after the offense has been committed presents a novel question. We conclude that the 14(4)(b) defense cannot be raised based on such an after-the-fact assessment. Therefore, we affirm the judgment of conviction of defendant, Stephen S. Fioco, entered on a jury verdict finding him guilty of cultivating more than six but fewer than thirty marijuana plants.

## I. Background

¶ 2 On October 1, 2010, a deputy approached defendant's property in connection with an unrelated complaint. The deputy knocked on a door to a guest house, which became slightly ajar; determined that a protective sweep should be conducted; and, on entering, found what appeared to be marijuana plants. He contacted defendant, who produced a medical marijuana card based on a physician's certification.[1]

¶ 3 The next week, after the card had expired, the deputy returned and arrested defendant. Officers seized the plants. Approximately two months later, defendant obtained a certification from a second physician describing certain medical conditions, on the basis of which defendant "needs 25 plants."

¶ 4 By the time of trial, the second physician was deceased. Defendant relied on this certification to assert the 14(4)(b) defense. The jury was instructed on this defense, but implicitly rejected it by returning a guilty verdict.

¶ 5 On appeal, defendant contends the trial court should have granted his motion to dismiss because the prosecution failed to prove that he cultivated more than the six marijuana plants allowed a medical marijuana patient, or, alternatively, it failed to prove that the greater number of plants he cultivated was not medically necessary. We conclude that the first contention is barred by a judicial admission of defendant's trial counsel. We further conclude that the second conten-

---

1. The term "certification" does not appear in the Amendment. This opinion uses it because that is the title of the document that must be completed by a physician and submitted to the state health agency to obtain a registry identification card.

tion fails under the harmless error doctrine, because defendant should not have been allowed to raise the 14(4)(b) defense based on the second physician's certification.

## II. Standard of Review

¶ 6 On a challenge to the sufficiency of the evidence, an appellate court evaluates whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt. *Clark v. People,* 232 P.3d 1287, 1291 (Colo.2010).

¶ 7 To raise an affirmative defense, a defendant must identify "some credible evidence" supporting the defense. § 18–1–407(1), C.R.S.2013; *People v. Voth,* 2013 CO 61, ¶ 18, 312 P.3d 144. Whether the defendant met this burden is a question of law subject to de novo review. *People v. Palomo,* 272 P.3d 1106, 1110 (Colo.App.2011).

¶ 8 When a defendant identifies such credible evidence, the prosecution bears the burden of proving beyond a reasonable doubt that the affirmative defense does not apply. *See* § 18–1–407(2), C.R.S.2013; *People v. Pickering,* 276 P.3d 553, 555 (Colo.2011).

## III. Law

¶ 9 The statute under which defendant was convicted provided:

> Except for a person who lawfully cultivates medical marijuana pursuant to the authority granted in section 14 of article XVIII of the state constitution, a person shall not knowingly cultivate, grow, or produce a marijuana plant or knowingly allow a marijuana plant to be cultivated, grown, or produced on land that the person owns, occupies, or controls.

Ch. 259, sec. 6, § 18–18–406(7.5), 2010 Colo. Sess. Laws 1169. The crime was a class five felony if it involved more than six but fewer than thirty marijuana plants. Ch. 259, sec. 6, § 18–18–406(7.5)(b), 2010 Colo. Sess. Laws 1169.

¶ 10 But the Amendment creates defenses to criminal charges by allowing a person suffering from a debilitating medical condition to use an amount of marijuana that is medically necessary. As relevant here, it provides:

> (4)(a) A patient may engage in the medical use of marijuana, with no more marijuana than is medically necessary to address a debilitating medical condition. A patient's medical use of marijuana, within the following limits, is lawful:
>
> > (I) No more than two ounces of a usable form of marijuana; and
> >
> > (II) No more than six marijuana plants, with three or fewer being mature, flowering plants that are producing a usable form of marijuana.
>
> (b) For quantities of marijuana in excess of these amounts, a patient ... may raise as an affirmative defense to charges of violation of state law that such greater amounts were medically necessary to address the patient's debilitating medical condition.

Colo. Const. art. XVIII, § 14(4).

## IV. Application

### A. Whether the Prosecution Failed to Prove that the Number of Marijuana Plants Exceeded Six

¶ 11 Defendant does not dispute that he cultivated marijuana plants, but contends the prosecution failed to prove that he cultivated more than the six marijuana plants allowed by section 14(4)(a)(II) of the Amendment. However, during closing argument, while walking the jury through the jury instructions regarding the 14(4)(b) defense, defendant's counsel said:

> So what do we do with these plants—the number of plants? *We can agree it's over six.* I think there might be a dispute to how much over six because we have cops testifying one way, we have photos that say something else.

(Emphasis added.)

¶ 12 Based on this statement, we agree with the Attorney General that "[d]efense counsel conceded [this issue] during his closing argument." *See People v. Rivers,* 727 P.2d 394, 400 (Colo.App.1986) (the defendant's concession during closing argument of

his identity as the person who killed the victim rendered harmless any error in the admission of similar transaction evidence); *see also Gordon v. Benson*, 925 P.2d 775, 781 (Colo.1996) (counsel's statement during closing argument constitutes a judicial admission or concession if it is "a deliberate declaration for the purpose of dispensing with proof of a formal matter about which there was no dispute"); *Larson v. A.T.S.I.*, 859 P.2d 273, 276 (Colo.App.1993) (counsel's statement during closing argument constituted a judicial admission because it was unequivocal and pertained to a factual matter).

### B. Whether the Prosecution Failed to Disprove that the Greater Number of Plants Was Medically Necessary

¶ 13 Defendant next contends that even if the prosecution proved he cultivated more than six marijuana plants, his conviction must be set aside because the prosecution failed to disprove his affirmative defense that "such greater amounts were medically necessary to address [his] debilitating medical condition." Colo. Const. art. XVIII, § 14(4)(b). We conclude that because the second physician's certification that defendant "needs 25 plants" was obtained after defendant had committed the offense, he should not have been allowed to raise the 14(4)(b) defense. Therefore, we reject this contention as harmless error. *See* Crim. P. 52(a) ("Any error ... which does not affect substantial rights shall be disregarded.").

¶ 14 The Amendment does not address whether, to raise the 14(4)(b) defense, a physician's diagnosis of a debilitating medical condition and assessment[2] of a need for more than six plants must precede conduct that would otherwise constitute unlawful cultivation. Thus, it is ambiguous. *See Palomo*, 272 P.3d at 1112 ("The silence of a statute on matters within its scope renders it ambiguous."). We interpret the Amendment as limiting the 14(4)(b) defense to a physi-

cian's assessment and advice obtained before a defendant committed the offense. *See* Colo. Const. art. XVIII, § 14(2)(a)(II) (to establish an affirmative defense to a charge of violating the state's criminal law, a patient must have been "advised by his or her physician ... that the patient might benefit from the medical use of marijuana").

¶ 15 Principles of statutory construction apply to interpreting a constitutional amendment. *Patterson Recall Comm., Inc. v. Patterson*, 209 P.3d 1210, 1215 (Colo. App.2009) ("We are also guided by general principles of statutory interpretation and aids in construction."); *see generally* §§ 2–4–201(1)(b), (c); 2–4–203, C.R.S.2013. As relevant here, those principles include:

- "[W]e start with the words, giv[ing] them their plain and commonsense meaning." *Marks v. Koch*, 284 P.3d 118, 122 (Colo. App.2011) (internal quotation marks omitted).

- "[We] read applicable provisions as a whole, harmonizing them if possible." *Id.* (internal quotation marks omitted).

- "We should avoid an unreasonable interpretation or one that produces an absurd result." *Patterson*, 209 P.3d at 1215.

- "In construing a constitutional provision, our obligation is to give effect to the intent of the electorate that adopted it." *Harwood v. Senate Majority Fund, LLC*, 141 P.3d 962, 964 (Colo.App.2006).

- "When interpreting a constitutional amendment, we may look to the explanatory publication of the Legislative Council of the Colorado General Assembly, otherwise known as the Blue Book." *Grossman v. Dean*, 80 P.3d 952, 962 (Colo.App.2003).

¶ 16 Section 14(4)(a) of the Amendment authorizes the "medical use" of no more than six marijuana plants, if such use is "medically necessary" to address a debilitating medical

---

**2.** The term "assessment" does not appear in section 14(4) of article XVIII of the Colorado Constitution. This opinion uses it based on section 14(2)(c)(I), which creates an exemption from "the state's criminal laws" to advise a patient that "he or she might benefit from the medical use of marijuana" based on "the physician's con-

temporaneous assessment of the patient's medical history and current medical condition." Section 14(3)(b)(I) refers to "the physician's conclusion that the patient might benefit from the medical use of marijuana." In using "assessment" rather than "conclusion," this opinion does not suggest a difference between the terms.

condition. The Amendment defines "medical use" as

the acquisition, possession, production, use, or transportation of marijuana or paraphernalia related to the administration of such marijuana to address the symptoms or effects of a patient's debilitating medical condition, *which may be authorized only after a diagnosis of the patient's debilitating medical condition by a physician or physicians,* as provided by this section.

Colo. Const. art. XVIII, § 14(1)(b) (emphasis added).

¶ 17 But section 14(4)(b) does not contain the phrase "medical use." Instead, it provides a medical marijuana patient who is criminally charged for possession of more than six marijuana plants with an affirmative defense that such greater number was "medically necessary" to address a debilitating medical condition. The Amendment does not define the phrase "medically necessary."

¶ 18 Reading section 14(4)(b) harmoniously with section 14(4)(a), we first conclude that the 14(4)(b) defense must be based on "medical use." In allowing a patient "[n]o more than six marijuana plants," section 14(4)(a) refers to "medical use." The wording of the Amendment does not offer any reason why the greater number of marijuana plants allowed by section 14(4)(b) would not be subject to the same limitation. And the definition of "medical use" includes "possession" and "production." These terms would encompass cultivating marijuana, regardless of the number of plants involved. *Cf. People v. Sexton,* 2012 COA 26, ¶¶ 2–6, 296 P.3d 157 (although evidence showed that the defendant was growing marijuana, jury found defendant guilty of possession but not cultivation).

¶ 19 Absent a definition of "medically necessary" in the Amendment or Colorado case law, the inquiry into the plain meaning of this phrase may begin with dictionary definitions. *See People v. Forgey,* 770 P.2d 781, 783 (Colo.1989) (when construing statutory terms, "[w] e have frequently looked to the dictionary for assistance in determining the

plain and ordinary meaning of words"). "Medical" is defined as, inter alia, (1) "of, relating to, or concerned with physicians or the practice of medicine ....."; and (2) "requiring ... medical treatment." *Webster's Third New International Dictionary* 1402 (2002).

¶ 20 However, "[d]ictionary definitions are acontextual, whereas the meaning of sentences depends critically on context, including all sorts of background understandings." *United States v. Costello,* 666 F.3d 1040, 1044 (7th Cir.2012). And statutory interpretation "demands careful attention to the nuances and specialized connotations that speakers of the relevant language attach to particular words and phrases in the context in which they are being used." *Id.* (internal quotation marks omitted); *see also City of Westminster v. Dogan Constr. Co.,* 930 P.2d 585, 592 (Colo.1997) (dictionary definitions do not reflect statutory purposes or objectives).

¶ 21 Here, the dictionary definition of "medical" is consistent with numerous references in the Amendment to the patient's "physician." *See, e.g.,* Colo. Const. art. XVIII; §§ 14(2)(a)(I), (II); 14(2)(c)(I), (II); 14(3)(b)(I); 14(6)(a)-(c). Thus, we further conclude that the phrase "medically necessary" means "necessary based on a physician's assessment."[3] These conclusions limit the 14(4)(b) defense to the medical use of more than six marijuana plants only if such excess use is necessary based on a physician's assessment.

¶ 22 Having so interpreted "medically necessary," answering the timing question whether that physician's assessment and advice must precede the use of excess plants is informed by returning to the definition of "medical use," in section 14(1)(b). Such use is allowed "only after" a diagnosis of the patient's debilitating medical condition "by a physician." Based on our conclusion that the 14(4)(b) defense must be based on medical use, we also conclude "medically necessary" under section 14(4)(b) can exist only after a

---

**3.** Because this case presents only the question whether a defendant may raise the 14(4)(b) defense based on an after-the-fact assessment of a physician that more than six plants are medically necessary, we decline to decide what constitutes "necessary."

physician has assessed the need for excess plants and advised the patient of such need.

¶ 23 Suppose a person cultivated more than six marijuana plants, believing that the greater number was medically necessary. The Blue Book makes clear that under the Amendment, "[u]sing marijuana for other than medical purposes will still be illegal in Colorado." *See People v. Clendenin*, 232 P.3d 210, 217 (Colo.App.2009) (Loeb, J., specially concurring). And it explains that a law enforcement officer who arrests someone for possession of marijuana will be able to access the state's medical marijuana registry to determine whether the person is registered. Conditioning "medically necessary" on a physician's prior assessment and advice vindicates the intent of the electorate because allowing the defense to be asserted based on an after-the-fact assessment could encourage unlawful marijuana use. Further, reliance on an after-the-fact assessment would render registry queries by arresting officers purposeless.

¶ 24 But would an interpretation that allows a person to cultivate an excess number of marijuana plants based on only self-diagnosis, yet in the event of criminal charges raise the 14(4)(b) defense based on a medical assessment obtained after-the-fact, be unreasonable? Yes, because limiting the 14(4)(b) defense to conduct occurring after a physician's assessment and advice has been obtained avoids the perils of self-diagnosis. *Cf. Taylor v. Iowa Dep't of Job Serv.*, 362 N.W.2d 534, 539 (Iowa 1985) (presumption that leaving work due to illness without physician's advice is not good cause for unemployment compensation "reduces the possibility that persons would be allowed to draw unemployment benefits on the basis of a self-diagnosis of illness that is either inaccurate or fraudulent").

¶ 25 A defendant must present "some credible evidence" supporting an affirmative defense. *Voth*, ¶ 18 (internal quotation marks omitted). The quality of evidence needed to surpass this threshold will vary, depending on the nature of the affirmative defense at issue. *See, e.g., People v. Garcia*, 113 P.3d 775, 783 (Colo.2005) ("[T]he proof that a defendant must offer to support [the affirmative defenses of involuntary intoxication and insanity] is strikingly different."). For the 14(4)(b) defense, an after-the-fact medical assessment does not constitute "some credible evidence" in support of the defense.[4] Therefore, the second physician's certification that defendant "needs 25 plants" did not suffice to raise the 14(4)(b) defense that his prior use of more than six plants was medically necessary.

¶ 26 Therefore, even if the prosecution's evidence was insufficient to disprove this defense, any error was harmless because the defense should not have been permitted in the case. *See People v. Eckert*, 919 P.2d 962, 965 (Colo.App.1996) (because the defendant had failed to show "make-my-day" defense was applicable, any instructional error concerning defense was harmless).

### V. Conclusion

¶ 27 The judgment is affirmed.

CHIEF JUDGE LOEB and JUDGE NEY * concur.

---

4. In other contexts, a retrospective medical diagnosis can have legal significance. *See, e.g.,* §§ 16–8–106, –107, C.R.S.2013 (discussing use of court-ordered psychiatric examinations for purposes of insanity defense). However, in those contexts, the purpose of the diagnosis is to establish what a person's medical condition was at a particular point in the past. But the Amendment's purpose is to recognize the limited rights of medical marijuana patients by carving out narrow exceptions and affirmative defenses to otherwise unlawful conduct.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2013.