**John ANSON, Plaintiff–Appellee and Cross–Appellant,**

v.

**Jerry E. TRUJILLO and Peggy L. Trujillo, Defendants–Appellants and Cross–Appellees.**

No. 01CA0846.

Colorado Court of Appeals, Div. V.

Aug. 15, 2002.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2001.

Fisher, Sweetbaum & Levin, P.C., Scott L. Levin, E. James Wilder, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Kenneth L. Keene, Jr., Denver, Colorado, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge NIETO.

Defendant Jerry E. Trujillo appeals the judgment entered in favor of plaintiff, John Anson. Plaintiff cross-appeals the directed verdict entered in favor of defendant Peggy Trujillo and the denial of his claim for non-economic damages. We affirm in part, reverse in part, and remand with directions.

Defendants purchased eight adjoining vacant lots in 1995 and built houses on five of those lots. After seeing a sign that the remaining lots were for sale, plaintiff, who operated his own construction business, inquired about purchasing two lots in order to build houses there. Plaintiff and his wife met with Mr. Trujillo to discuss the property, and Mr. Trujillo stated that a swimming club had existed on the property but that the swimming pool was not located on the lots that plaintiff was considering purchasing. However, Mr. Trujillo was aware that the remains of a swimming pool were buried on these lots, but did not so advise plaintiff.

The parties entered into a contract for the purchase of two adjoining lots in March 1997, and plaintiff began to construct a house on one lot in 1999. When an excavation company began digging the hole for the foundation, it discovered concrete from the buried swimming pool. As a result, additional excavation was required before the planned house could be built.

Plaintiff filed a complaint against defendants alleging claims for fraud, negligent misrepresentation, and violation of the Colorado Consumer Protection Act (CCPA), § 6–1–101, et seq., C.R.S.2001. A jury trial was held, and at the conclusion of plaintiff's case, defendants moved for a directed verdict. The trial court granted the motion with respect to Ms. Trujillo and denied it with respect to Mr. Trujillo. The jury found in favor of plaintiff on all claims and awarded him actual and exemplary damages. The trial court vacated the award of exemplary damages and awarded plaintiff treble damages pursuant to § 6–1–113(2)(a)(III), C.R.S. 2001. Plaintiff also moved for an award of attorney fees and costs under § 6–1–113(2)(b), C.R.S.2001, and the trial court granted the motion. This appeal and cross-appeal followed.

I.

Mr. Trujillo contends that the trial court did not have jurisdiction to award damages under the CCPA because plaintiff lacked standing to bring a claim under that Act. We agree.

A.

Generally, a court considering standing must determine whether the plaintiff suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions. If a plaintiff suffered no injury in fact, or suffered injury in fact, but not from the violation of a legal right, the claim should be dismissed for lack of standing. *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977). A question of standing to bring a statutory claim is essentially an inquiry into whether the subject statute can properly be understood as granting a right to judicial relief to persons in the plaintiff's position. *Pomerantz v. Microsoft Corp.,* 50 P.3d 929 (Colo.App.2002).

Standing is a jurisdictional issue that can be raised at any time, including as an issue raised for the first time on appeal. *Peters v. Smuggler–Durant Mining Corp.,* 910 P.2d 34 (Colo.App.1995), aff'd, 930 P.2d 575 (Colo.1997); *Bennett v. Board of Trustees,* 782 P.2d 1214 (Colo.App.1989).

To establish a private cause of action pursuant to the CCPA, a plaintiff must establish

(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Hall v. Walter,* 969 P.2d 224, 235 (Colo.1998). The first three elements of this analysis determine whether the defendant's actions fall under the purview of the CCPA. *Martinez v. Lewis,* 969 P.2d 213 (Colo.1998).

### B.

Mr. Trujillo contends that plaintiff cannot meet the third element, namely that Mr. Trujillo's conduct significantly impacted the public, and therefore, plaintiff did not have standing to bring his claim under the CCPA. Thus, Mr. Trujillo argues, the trial court lacked jurisdiction to award damages, costs, and fees pursuant to the CCPA. We agree.

■ In assessing the public impact of an allegedly deceptive trade practice, three considerations are particularly relevant: "the number of consumers directly affected by the challenged practice, the relative sophistication and bargaining power of the consumers affected by the challenged practice, and evidence that the challenged practice previously has impacted other consumers or has significant potential to do so in the future." *Martinez v. Lewis, supra,* 969 P.2d at 222.

■ Here, with respect to the first consideration, plaintiff is the only person impacted by Mr. Trujillo's conduct. The transaction in question involved only one parcel of land and the parties to this action. These circumstances suggest "a purely private wrong," which generally does not indicate that a defendant's conduct significantly impacted the public as actual or potential consumers. *See Martinez v. Lewis, supra,* 969 P.2d at 222.

Second, plaintiff is in the construction business, as was Mr. Trujillo. Also, plaintiff was not without other means of obtaining information about the nature and history of the property. As such, he was not the typical consumer that the CCPA seeks to protect. *See Martinez v. Lewis, supra* (CCPA protects consumers who are in a relatively weak bargaining position, particularly where consumers are dependent on the defendant for access to truthful information regarding the transaction).

Finally, plaintiff has not alleged, nor was there evidence, that other consumers were affected by Mr. Trujillo's misrepresentation or concealment. The misrepresentation here was not advertised or otherwise presented to the public in an effort to induce sales. Moreover, because the transaction here involved real property that had unique defects and has already been sold to plaintiff, there is virtually no possibility that other consumers will be affected by such practices in the future.

Under these circumstances, we conclude that Mr. Trujillo's conduct did not significantly impact the public. Therefore, his conduct did not fall within the purview of the CCPA, and plaintiff cannot establish a private right of action under that act.

Plaintiff argues that the fact that Mr. Trujillo posted a sign offering the property for sale and sold other lots in the course of his business supports a conclusion that his conduct impacted the public as consumers. However, Mr. Trujillo's conduct involved misrepresentation or concealment in a single transaction and concerning a single piece of real property. There is no indication that the sign contained improper information or otherwise constituted conduct that would violate the CCPA. Similarly, the fact that Mr. Trujillo sold other property to the public, without an allegation that such transactions also involved deceptive trade practices, does not support a conclusion that his conduct impacted the public as actual or potential consumers.

Therefore, plaintiff lacked standing to bring his CCPA claim because he has not suffered injury to an interest protected by the CCPA. *See Wimberly v. Ettenberg, supra.* Thus, the trial court was without jurisdiction to award damages, costs, or fees pursuant to it. Accordingly, the trial court's

judgment on the CCPA claim awarding treble damages, costs, and fees is reversed.

### C.

Considering the damages claimed by plaintiff and the manner in which the jury was instructed, we conclude that the judgment on plaintiff's other claims will not be affected by reversal of the judgment on the CCPA claim.

The jury was instructed that plaintiff was seeking the same damages on each of the claims and that it "may award him damages only once for the same. losses." Further, only one damage instruction was given for all the claims. On the verdict form, the jury found for plaintiff on all his claims, but awarded only one amount of damages. When the instructions and verdict form are read together, it is clear that the jury found the same damages for each claim. Therefore, the judgment entered on the fraud and negligent misrepresentation claims is unaffected by reversal of the judgment on the CCPA claim.

### D.

■ The trial court vacated the jury's award of exemplary damages after it trebled the damages on the CCPA claim. Because we have reversed the award of damages under the CCPA, there is no basis for vacating the exemplary damages award. Accordingly, on remand the trial court should reinstate the jury's award of exemplary damages.

Our resolution of the issues above makes it unnecessary to address Mr. Trujillo's other contentions.

### II.

On cross-appeal, plaintiff contends that the trial court erred in granting defendants' motion for a directed verdict with respect to Ms. Trujillo on the CCPA and fraudulent concealment claims. We are not persuaded.

■ In considering a motion for directed verdict, a court must view the evidence, including all reasonable inferences that can be legitimately drawn from the evidence, in the light most favorable to the nonmoving party. If the evidence is simply unable to support a verdict in favor of the nonmoving party, the issue in question should not be submitted to a jury, and a directed verdict should be entered. *Huntoon v. TCI Cablevision, Inc.,* 969 P.2d 681 (Colo.1998). If there is no evidence to support an element of a claim, a directed verdict is appropriate. *Denver Dry Goods Co. v. Pender,* 128 Colo. 281, 262 P.2d 257 (1953).

■ To prove fraudulent concealment, a plaintiff must establish:

(1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Ballow v. PHICO Ins. Co.,* 875 P.2d 1354, 1361 (Colo.1993).

■ Here the trial court granted the directed verdict with respect to Ms. Trujillo, concluding there was no evidence to support plaintiff's claims against her other than the fact that she was a record owner and conveyed the property.

Plaintiff argues that the evidence viewed in the light most favorable to him reveals that he established a prima facie claim against Ms. Trujillo for violation of the CCPA and fraudulent concealment. Because of our resolution of the standing issue above, it is unnecessary to address plaintiff's argument regarding the CCPA claim.

With respect to the fraudulent concealment claim, plaintiff argues that the parties' stipulation establishes his prima facie case. The stipulation states that the Trujillos were the sellers of the property, that they knew of the existence and location of the buried swimming pool, that this information was material, and that they had a duty to disclose such information.

However, those stipulations, even when considered in the light most favorable to plaintiff, do not indicate that Ms. Trujillo concealed the information with the intention

that plaintiff act upon it. The stipulations are the only evidence offered by plaintiff in support of his fraudulent concealment claim against Ms. Trujillo. Ms. Trujillo was not present when the parties met to discuss the property, and plaintiff has not alleged that she was involved in the transaction other than as a seller who signed the deed at closing.

▮ Jurors are entitled to draw reasonable inferences from the evidence, but they may not speculate concerning elements of a claim. *New Brantner Extension Ditch Co. v. Ferguson*, 134 Colo. 502, 307 P.2d 479 (1957); *Denver Dry Goods Co. v. Pender, supra.*

Ms. Trujillo chose to stipulate to several elements of the concealment claim, but she did not stipulate to the intent element. Absent other evidence of her involvement in the transaction, the stipulations that she was aware of the pool and had a duty to disclose it are insufficient to infer that she failed to disclose the information with the intention that plaintiff act upon it.

Thus, plaintiff failed to establish a prima facie case of fraudulent concealment against Ms. Trujillo, and the trial court properly directed a verdict with respect to her on this claim.

### III.

Plaintiff also challenges on cross-appeal the trial court's rejection of his tendered jury instruction concerning noneconomic damages, including mental suffering and emotional distress. The trial court concluded that, because plaintiff's action involved damage to property rather than personal injury, noneconomic damages are not available and refused to submit the instruction. Plaintiff argues that this was error because he is entitled to recover such damages on a fraud claim. We agree.

▮ Generally, there can be no recovery in tort for mental anguish or suffering by a plaintiff in connection with an injury to the plaintiff's property. However, where the act causing the injury to property was inspired by fraud, malice, or like motives, mental suffering may be a proper element of damages. *Valley Development Co. v. Weeks*, 147 Colo.

591, 364 P.2d 730 (1961); *McNeill v. Allen*, 35 Colo.App. 317, 534 P.2d 813 (1975); *see also Webster v. Boone*, 992 P.2d 1183 (Colo. App.1999).

Because plaintiff was entitled to assert noneconomic damages relating to his fraud claim, the trial court erred in refusing the proposed jury instruction as to that claim. *See Kessman v. City & County of Denver*, 709 P.2d 975 (Colo.App.1985)(where proposed instruction was an accurate statement of the law, trial court erred in refusing to submit instruction to the jury).

▮ Mr. Trujillo argues that plaintiff did not specifically plead emotional distress as required by C.R.C.P. 9(g). However, the prayer for relief in plaintiff's complaint specifically included emotional distress and pain and suffering. Moreover, the trial management order submitted by the parties also included emotional distress and pain and suffering in the itemization of damages. Therefore, we reject Mr. Trujillo's argument.

▮ Mr. Trujillo also argues that plaintiff failed to introduce evidence of significant emotional impact as a result of fraud. However, plaintiff testified that defendants' actions caused serious financial problems for him and his family. These problems caused him to worry about raising his six children because he did not know how he was going to "get out of the situation." He further testified that the financial problems "affected [his] life, it affected [his] sleep habits, it affected [his] other jobs." Plaintiff's wife verified that the financial problems made plaintiff angry and caused them both "a lot of sleepless nights." Thus, some evidence was admitted that could support a finding of noneconomic damages on this claim. *See Margenau v. Bowlin*, 12 P.3d 1214 (Colo.App. 2000)(if fact of damages is certain, jury can make reasonable estimate where there is some evidence of damage).

Therefore, the case must be remanded for determination of any noneconomic damages that may be attributed to plaintiff's fraud claim. The parties are entitled to a new trial on this issue if either so chooses.

Accordingly, the judgment on the CCPA claim and the award of treble damages, attorney fees, and costs based on that claim are reversed. The judgment also is reversed to the extent it denies plaintiff's claim for noneconomic damages on his fraud claim, and the case is remanded with directions to determine any noneconomic damages that may be attributable to plaintiff's fraud claim and to reinstate the jury's award of exemplary damages. In all other respects the judgment is affirmed.

Judge MARQUEZ and Judge ROY, concur.